IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD MORGAN a/k/a EDDY MORGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WORLD ALLIANCE FINANCIAL CORP., | : | |
| ET AL. | : | No. 12-4617 |

## MEMORANDUM

**Padova, J.**  January 31, 2013

  This case arises out of a 2009 reverse mortgage transaction, pursuant to which Plaintiff Edward Morgan transferred his ownership interest in his marital home to his wife, who then entered into a reverse mortgage on the house in her name alone. After Plaintiff's wife died, the loan became due and payable in full, Plaintiff was unable to pay, and he is now facing foreclosure. In this action, Plaintiff asserts two claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"): a damages claim against World Alliance Financial Corp. ("World Alliance") and Flagship Mortgage Corp. ("Flagship"), and a rescission claim against World Alliance and Reverse Mortgage Solutions, Inc. ("RMS"). World Alliance and Reverse Mortgage Solutions, Inc. have filed a Motion to Dismiss the claims against them. For the following reasons, we grant that Motion insofar as it seeks dismissal of the rescission claim, but deny it insofar as it seeks dismissal of the damages claim.

### I. BACKGROUND

  The Complaint alleges that Plaintiff Edward Morgan is the surviving spouse of Yvonne O. Morgan ("Mrs. Morgan"). (Compl. ¶ 14.) From 1997 until Mrs. Morgan's death, Plaintiff and Mrs. Morgan lived together in a house at 5240 Catharine Street in Philadelphia (the "Property"). (Id. ¶ 6, 16.) The Property had been in Mrs. Morgan's family since 1969, when her parents purchased it. (Id. ¶ 15.) In 1997, after Mrs. Morgan's mother passed away, Mrs. Morgan, acting

as administrator of her mother's estate, deeded the property to herself and Plaintiff. (Id. ¶ 17.) Later that same year, Mrs. Morgan executed a second, "corrective" deed naming herself and Plaintiff as grantees as tenants by the entireties. (Id.)

In 2008 or 2009, Mrs. Morgan was suffering from cancer, emphysema and coronary artery disease when she began speaking with agents of Flagship, including an individual named Kirk Ayzenberg, about obtaining a reverse mortgage on the Property. (Id. ¶ 22-24.) Flagship and World Alliance subsequently prepared and processed a reverse loan application in the names of Plaintiff and Mrs. Morgan. (Id. ¶ 24.) On or about January 20, 2009, Mrs. Morgan and Plaintiff participated in a Home Equity Conversion Mortgage counseling session, which was arranged by Flagship and World Alliance (id. ¶¶ 27-28), and which a federal statute requires as a condition to the Department of Housing and Urban Development insuring a reverse mortgage. (Id. ¶ 13 (citing 12 U.S.C. § 1715x-20(e) and (f)).) In the counseling session, which was conducted by a representative of ByDesign Financial Solutions ("ByDesign"), Plaintiff was treated as if he was a borrower along with his wife, and ByDesign never suggested that Plaintiff would be removed from the Property's title or that Flagship and World Alliance would structure the transaction so that he would not be a borrower. (Id. ¶¶ 28-30)

Thereafter, Flagship and World Alliance prepared a reverse mortgage application in Mrs. Morgan's name alone. (Id. ¶ 32.) They also prepared documents to take Plaintiff's name off the title to the property. (Id. ¶ 33.) On February 9, 2009, Flagship and World Alliance presented a variety of papers to Mrs. Morgan and Plaintiff for their signatures. (Id. ¶¶ 25, 42.) Among those papers were numerous papers in which both Plaintiff and Mrs. Morgan were identified as borrowers or, in the alternative, in which the two were identified as borrower and co-borrower.

2

(Id. ¶ 25.) However, also among the papers was a non-standard paper, which Plaintiff signed on February 9, 2009, and which stated: "I Eddy Morgan would like to be removed from the reverse mortgage loan. I would like the property address of 5240 Catherine Street to be just in my wife's name, Yvonne Morgan. Thank you." (Id. ¶ 43.) Mrs. Morgan also signed a non-standard paper, which stated: "I am writing this letter to inform that I, Yvonne Morgan would like to take my husband Eddy Morgan off the reverse mortgage program. I would like the reverse mortgage only in my name." (Id. ¶ 44.) Neither Flagship nor World Alliance explained that the consequence of removing Plaintiff's name from the title to the property and making the loan to Mrs. Morgan alone was that the reverse mortgage would become due and payable in full in the event of Mrs. Morgan's death. (Id. ¶¶ 34, 45). Moreover, neither Flagship nor World Alliance provided to Plaintiff or Mrs. Morgan a "Non-Borrower Spouse Ownership Interest Certification Form," which is a standard form that is designed to explain to a borrower and non-borrower the consequences of making a reverse mortgage to just one member of a husband-wife team. (Id. ¶¶ 35-38.)

The loan closing was held on February 13, 2009, at the Morgans' dining room table. (Id. 50.) At the time of the closing, Mrs. Morgan was 72 years old and Plaintiff was 67 years old. (Id. ¶ 51.) Present at the closing were Mr. Ayzenberg and another unidentified woman (the "Settlement Agent"), who was an employee of a settlement agency that either Flagship or World Alliance had selected. (Id. ¶ 52.) At the closing, the Morgans were asked to sign one paper in which they were both identified as borrowers and another paper in which they were identified as borrower and co-borrower. (Id. ¶¶ 56-57.) Plaintiff was also asked to sign another paper, and when he asked what the paper was for, Mr. Ayzenberg stated that it was so that Mrs. Morgan could

3

get more money from the reverse mortgage loan. (Id. ¶ 58-60.) Neither he nor the Settlement Agent advised Plaintiff that the paper was, in fact, a deed and that, by signing it, Plaintiff was transferring his ownership interest in the Property to Mrs. Morgan. (See id. ¶¶ 61-64.) Plaintiff would not have signed the paper if he had known that it was a deed conveying away his interest in the Property. (Id. ¶ 66.)

Mrs. Morgan executed at the closing an "adjustable rate open-end home equity conversion mortgage" in favor of World Alliance, in a maximum amount of $225,000. (Id. ¶ 68.) Plaintiff was not asked to, and did not, execute the mortgage. (Id. ¶ 69.) He was also provided no written disclosure that informed him of his right to rescind or cancel the transaction. (Id. ¶ 75.) The total loan proceeds from the reverse mortgage were $105,900. (Id. ¶ 70.) The proceeds were used to pay off prior liens of $85,021.44, and to pay closing costs of $9,087.20. (Id. ¶¶ 71, 73.) $5,187.93 was set aside for servicing fees to the loan servicer, and Mrs. Morgan received a check for $6,603.43. (Id. ¶¶ 71, 74.)

According to the Complaint, a reverse mortgage in Mrs. Morgan's name alone, which became due and payable upon Mrs. Morgan's death, was entirely unsuitable for Plaintiff and Mrs. Morgan, because (1) Mrs. Morgan's cancer and other medical conditions reduced her life expectancy; (2) Plaintiff and Mrs. Morgan wanted Plaintiff to retain the home after Mrs. Morgan's death; (3) it was unlikely that Plaintiff would be able to qualify for a mortgage to pay off the loan amount if Mrs. Morgan died; and (4) it was unlikely that Plaintiff would be able to keep the home upon Mrs. Morgan's death. (Id. ¶ 47.)

On July 14, 2009, five months after the reverse mortgage closing, Mrs. Morgan executed a deed for the property, conveying it back to herself and Plaintiff, as husband and wife. (Id. ¶ 82.)

4

In April or May 2010, World Alliance assigned the reverse mortgage to RMS. (Id. ¶ 83.) RMS is therefore the current mortgage holder. (Id. ¶¶ 83-84.)

Mrs. Morgan died intestate on September 30, 2010, at the age of 73. (Id. ¶ 85.) Because the Property was held by Mrs. Morgan and Plaintiff as tenants by the entireties, Mr. Morgan became the sole owner of the property upon her death. (Id. ¶ 86.) On November 30, 2010, RMS sent a notice (the "Notice"), addressed to Joyce Ann Morgan, which stated that there would be no further advances on the mortgage account and that the mortgage balance had to be repaid in full. (Id. ¶ 87.) The Notice stated that the balance due on the mortgage was $107,482.15. (Id. ¶ 87.)

In August 2011, Plaintiff sent a notice to both World Alliance and RMS, by certified mail, stating that he was cancelling the mortgage transaction. (Id. ¶ 107.) In a letter dated September 8, 2011, RMS responded that it was denying Plaintiff's request to cancel the loan. (Id. ¶¶ 113-14.) In a letter dated September 19, 2011, World Alliance likewise stated that it refused to accept Plaintiff's notice of cancellation. (Id. ¶¶ 117-18.) On October 11, 2011, RMS commenced a foreclosure action against the Property. (Id. ¶ 88.) Plaintiff remains unable to pay the mortgage balance. (Id. ¶ 89.)

Plaintiff filed the Complaint in this action on August 15, 2012. Count I asserts a UTPCPL claim against World Alliance and Flagship for damages, based on their "unfair or deceptive practices" in connection with the reverse mortgage. See 73 Pa. Stat. Ann. § 201-2 (defining "unfair or deceptive practices" under the statute). Count II asserts a UTPCPL claim against World Alliance and RMS for rescission of the reverse mortgage. World Alliance and RMS have jointly filed a Motion to Dismiss both Counts of the Complaint pursuant to Fed. R. Civ. P.

5

12(b)(6).[1]

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (alteration in original) (quotation omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a

---

[1] The third Defendant, Flagship, was served with the Complaint on December 4, 2012, but has not yet responded.

complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 1235-36 (3d ed. 2004)).

## III. DISCUSSION

### A. Count I – Claim for Damages

As noted above, Count I asserts a UTPCPL claim against World Alliance and Flagship for unfair and deceptive practices. Specifically, Count I asserts that, in procuring the reverse mortgage, World Alliance and Flagship used tactics that constituted "unfair or deceptive" conduct as that phrase is defined in 73 Pa. Stat. Ann. §§ 201-2(4)(v), (vii) and (xxi).[2] Defendants argue in their Motion that Plaintiff lacks standing to bring this claim, because he was not a party to the resulting reverse mortgage.[3] They alternatively argue that Plaintiff has failed to state a claim

---

[2] These provisions define "unfair or deceptive practices" to include "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have . . . ," 73 Pa. Stat. Ann. § 201-2(4)(v); "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another," id. § 201-2(4)(vii); and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding," id. § 201-2(4)(xxi).

[3] Defendants attach thirteen exhibits to their Memorandum of Law. Exhibits A-H are selected documents from the Morgans' loan file, and Exhibits I-K are public records. Plaintiff does not object to our consideration of the public records, but does object to our consideration of the documents from the loan file, arguing that they are not integral to his Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (stating that "document[s] *integral to or explicitly relied upon* in the complaint" may be considered on a motion to dismiss).

Defendants take the position that we may consider the loan file documents, because they are indisputably authentic documents on which the Plaintiff bases his claim. See Pension Benefit Guar. Corp. v. White Cosol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); Dougherty v. Wells Fargo Home Loans, Inc., 425 F. Supp. 2d 599, 602-03 (E.D. Pa. 2006). We agree that Plaintiff bases his claim on certain of these documents, which are specifically referenced in the Complaint. (See, e.g., Compl. ¶ 43 (referencing and quoting Feb. 9, 2009 "authorization paper" signed by Plaintiff, which Defendants attach as Exhibit D to their Mem.). However, the Complaint does not

7

upon which relief may be granted because Plaintiff (1) does not allege the elements of common law fraud, and (2) does not allege that that anyone from World Alliance – as opposed to Flagship – engaged in any unfair or deceptive conduct.

1. **Standing**

The UTCPCL provides a cause of action for "[a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property, real or personal as a result of the use or employment by any person of a method, act or practice declared unlawful under" the UTPCPL. 73 Pa. Stat. Ann. § 201-9.2(a). A person need not be in direct privity with a defendant in order to bring a claim for damages under the statute for the defendant's wrongful conduct. See Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 56 (3d Cir. 1992) (citation omitted). Rather, standing to bring a claim also extends to "those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable." Valley Forge Tower S. Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 647 (Pa. Super. Ct. 1990) (citing Woodward v. Dietrich, 548 A.2d 301, 315-16 (Pa. Super. Ct. 1988)), aff'd, 605 A.2d 798 (Pa. 1992) (per curiam). Standing does not, on the other hand, extend to "a plaintiff lacking any commercial dealings with the defendant," Katz, 972 F.2d at 57, or to an assignee of a purchaser. Gemini Physical Therapy & Rehab. Inc. v. State Farm Mut. Auto Ins. Co., 40 F.3d 63, 65 (3d Cir. 1994).

---

refer to other documents that Defendants have attached as exhibits, and it is far from clear that Plaintiff bases his claim on these documents. (See, e.g., Certificate of HECM Counseling, attached as Ex. C to Defs.' Mem.) Furthermore, Defendants do not even mention any of the documents from the loan file in the argument section of their Memorandum of Law, making it difficult to ascertain their relevance to the precise arguments that Defendants raise in their Motion. Under these circumstances, we will not consider any of the loan file documents in resolving the issues raised in Defendants' Motion.

Defendants argue that Plaintiff has not alleged that he purchased a mortgage loan from World Alliance or Flagship and, thus, he cannot qualify as a "purchaser" for purposes of bringing a cause of action under § 201-9.2. Defendants acknowledge that Plaintiff conveyed his interest in the Property to his wife, but maintain that this conveyance makes Plaintiff a "seller," not a "purchaser" and that the law is clear that "sellers" do not qualify as "purchasers" under § 201-9.2. See DeFazio v. Gregory, 836 A.2d 935, 939 (Pa. Super. Ct. 2003) (holding that "a seller cannot bring a private right of action under Section 201-9.2").

We reject Defendants' assertion that Plaintiff has not alleged sufficient facts to support a conclusion that he is a "purchaser" under § 201-9.2 and that the allegations instead support the conclusion that he is a "seller." This case is similar to Johnson v. MetLife Bank, N.A., __ F. Supp. 2d__, Civ. A. No. 11-800, 2012 WL 3194405 (E.D. Pa. Aug. 7, 2012), in which a UTPCPL plaintiff gave up his ownership interest in a home that he jointly owned with his mother, in order to facilitate the consummation of a reverse mortgage transaction in which only his mother was a party to the reverse mortgage. Id. at *4 ("Johnson II"); Johnson v. MetLife Bank, N.A., Civ. A. No. 11-800, 2011 WL 4389582, at *1 (E.D. Pa. Sept. 21, 2011) ("Johnson I"). The plaintiff in the Johnson case had adequately alleged that he was a "purchaser of mortgage services," because:

> Although Plaintiff is not named as a borrower in the Mortgage itself, the allegations, read in the light most favorable to him, support the inference that he, along with Mother, enlisted [defendant's] services, in order to procure a loan and that he was an integral part of the resulting mortgage transaction insofar as he was required to give up something of significant value in order to consummate that transaction. Certainly, Plaintiff's theory in this regard, along with the supporting allegations, are sufficient to state a non-speculative claim, which Plaintiff should be permitted to pursue and further develop in fact discovery.

Johnson I, 2011 WL 4389582, at *5; see also Johnson II, 2012 WL 3194405, at *3-*4. The same

9

reasoning applies here, and we conclude that Plaintiff has adequately alleged that he purchased mortgage services from World Alliance and Flagship insofar as he alleges that he gave up something of significant value – his ownership interest in the Property – in order to consummate the reverse mortgage transaction. At a minimum, Plaintiff should be permitted to develop a factual record to support this non-speculative claim during discovery.

We therefore deny Defendants' Motion to Dismiss to the extent that it asserts that Plaintiff does not have standing to assert a UTPCPL claim for World Alliance's and Flagship's allegedly unfair and deceptive practices in connection with that transaction.

### 2. **Deceptive Conduct**

Defendants argue that Plaintiff has failed to state a cognizable claim under the catchall provision of § 201-2(4), which prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstandings," because he has not alleged the common law elements of fraud. 73 Pa. Stat. Ann. § 201-2(4)(xxi). However, § 201-2(4)(xxi) prohibits not only fraudulent conduct, but also deceptive conduct, and "[t]he standard for alleging deceptive practices under the UTPCPL is less strict than that for alleging fraud in that it does not require allegations of scienter, and need not meet the requirements of Rule 9(b)." Rubenstein v. Dovenmuehle Mortg., Inc., Civ. A. No. 09-721, 2009 WL 3467769, *6 (E.D. Pa. Oct. 28, 2009); see also Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 150-55 (Pa. Super. Ct. 2012) (noting that § 201-2(4) prohibits "fraudulent **or deceptive conduct**" and concluding that deceptive conduct requires a lesser degree of proof). We therefore reject Defendants' assertion that we must apply the pleading standards for common law fraud to Plaintiff's claims under the catchall provision, and deny Defendants' Motion insofar as it asks that

we dismiss Plaintiff's claim for failure to meet those inapplicable pleading standards.

### 3. <u>Liability for Conduct of Flagship</u>

Defendants argue that Plaintiff has failed to state a claim against World Alliance under § 201-2 for unfair or deceptive conduct, because the Complaint alleges only that Kirk Ayzenberg of Flagship, the mortgage broker, engaged in deceptive conduct and made misrepresentations, and does not allege any unfair or deceptive conduct on the part of World Alliance, the lender. While World Alliance is correct that the only individual that the Complaint identifies by name is Mr. Ayzenberg, who is alleged to be an employee of Flagship, and that the only explicit verbal representations recounted in the Complaint are those of Mr. Ayzenberg, the Complaint alleges that World Alliance and Flagship were working in concert to market and sell the reverse mortgage at issue. Moreover, the Complaint repeatedly alleges that World Alliance, along with Flagship, engaged in misleading and deceptive conduct.

Specifically, the Complaint alleges as follows. Initially, "Flagship <u>and World Alliance</u> prepared and processed a reverse loan application in the names of Mr. and Mrs. Morgan." (Compl. ¶ 24 (emphasis added).) At that time, "Flagship <u>and World Alliance</u> presented Mr. and Mrs. Morgan with . . . numerous papers in which [they] were identified either both as borrowers or as borrower and co-borrower." (<u>Id.</u> ¶ 25 (emphasis added).) Thereafter, "Flagship <u>and World Alliance</u> arranged for Mr. and Mrs. Morgan to jointly have the required HECM counseling session," at which "Mr. Morgan was treated in all respects as if he would be a borrower on the loan together with his wife." (<u>Id.</u> ¶¶ 27-28 (emphasis added).) "Flagship <u>and World Alliance</u> . . . [subsequently] prepared and processed a new loan application in the name of Mrs. Morgan alone" and both "prepared documents to take Mr. Morgan's name off of the title to the property." (<u>Id.</u> ¶¶

11

32-33 (emphasis added).) Neither Flagship nor World Alliance followed their standard procedures in such circumstances, which was to present the borrowers with a "Non-Borrower Spouse Ownership Interest Certification" to advise the borrowers of the consequences of issuing the loan in Mrs. Morgan's name only. (Id. ¶¶ 35-37.) Instead, "Flagship and World Alliance prepared non-standard papers" that "purport[ed] to show that Mr. and Mrs. Morgan requested that the reverse mortgage be made in the name of Mrs. Morgan alone." (Id. ¶¶ 39-40 (emphasis added).) "Neither Flagship nor World Alliance ever provided Mr. Morgan with information explaining the new structure of the transaction, except to the extent that such information was provided in the authorization papers." (Id. ¶ 45 (emphasis added).) "Among the things that were not explained were that Mr. Morgan would be coming off the title to the property and that the reverse mortgage loan would become due upon Mrs. Morgan's death." (Id.)

Given these allegations, which concern both Flagship and World Alliance, and which we accept as true for purposes of Defendants' Motion to Dismiss, we deny Defendants' Motion insofar as it rests on the assertion that Plaintiff's claims rest on conduct of Flagship alone.

### B. Count II – Claim for Rescission

Plaintiff's UTPCPL rescission claim arises under § 201-7 of the UTPCPL, which requires a seller of goods or services to advise the buyer of the goods or services that he has the right to rescind the sale transaction within three business days of the transaction. See 73 Pa. Stat. Ann § 201-7(a).[4] The seller must provide the buyer with a written "Notice of Cancellation," which

---

[4] Section 201-7 provides in pertinent part as follows:

> Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or

includes specific information that is set forth in the statute. Id. § 201-7(b)(2). A rescinding buyer must "return[] or hold[] available for return to the seller . . . any merchandise received under the contract or sale." Id. § 201-7(a). The UTPCPL provides a private right of action for violation of § 201-7. Culbreath v. Lawrence J. Miller, Inc., 477 A.2d 491, 500 (Pa. Super. Ct. 1984); see also 73 Pa. Stat. Ann. §§ 201-3, 201-9.2. As relief, a plaintiff may recover monetary damages and/or such "additional relief as [the court] deems necessary or proper." 73 Pa. Stat. Ann. § 201-9.2(a).

Defendants argue that Plaintiff does not have standing to bring a UTPCPL rescission claim, because the statute only requires a seller to notify a "buyer" of his right to rescind, see n.4 *supra*, and Plaintiff does not qualify as a "buyer" of the mortgage under this provision of the statute because he was not a party to that mortgage. This issue was also addressed in Johnson II, which concluded that an individual who is not a party to a mortgage, like Plaintiff here, does not have a statutory right to rescind. 2012 WL 3194405, at *6-*7. As that case explains:

> The basic aspects of the rescission provision support a conclusion that a plaintiff must be a direct party to the contract at issue in order to be entitled to rescind it under the UTPCPL's rescission provision. To effect a rescission, a buyer must return or hold available for return the goods sold to him. 73 Pa. Stat. Ann. § 201−7(a). An individual who was not a party to the contract would have no legal right to return the goods and, thus, could not fulfill his obligations under the rescission provision.

---

resident at his residence either in person or by telephone, that consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale.

73 Pa. Stat. Ann. § 201-7(a).

Id. at *6.  Moreover, "a basic prerequisite for rescission is the ability to return the parties to the pre-contract status quo."  Id. (citing Cabot v. Jamie Record Co., Civ. A. No. 96–4672, 1999 WL 236737, at *8 (E.D. Pa. Apr. 19, 1999)).  An individual, like Plaintiff, who was not a party to the contract, "has no ability to return any goods purchased or disclaim any right to services, and thus could not return the parties to their pre-contract positions."  Id.

Plaintiff asserts that this case should be distinguished from Johnson II because the facts are dissimilar.  Plaintiff notes that the Complaint alleges that he, unlike the plaintiff in Johnson, was treated as an applicant for the reverse mortgage at issue until days before the closing, and he was asked to sign papers as the borrower.  Focusing on this factual distinction, he maintains that he, unlike the plaintiff in Johnson, was "treated by Defendants as a party to the contract and thus should be entitled to the same protections as a party."  (Pl. Br. at 21.)  Plaintiff, however, cites no legal authority for the novel proposition that a non-party's expectations prior to the execution of a written contract will be given legal effect, and we will not create new law to that effect.

Plaintiff relies instead on the rescission provision in the Truth and Lending Act ("TILA"), 15 U.S.C. § 1635.  Under the TILA's rescission provision, a creditor in a consumer credit transaction that is secured by the borrower's principal dwelling must give notice of the right to rescind not only to the borrower himself, but also to any other individual "whose ownership interest [in the dwelling] will be subject to the [creditor's] security interest."  Regulation Z, 12 C.F.R. § 226.23(a)(1).[5]  Plaintiff concedes that the TILA does not apply here, but he nevertheless

---

[5] The Federal Reserve Board promulgated Regulation Z to enforce and implement the TILA, see Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 898 (3d Cir. 1990), and the "Supreme Court has directed courts to afford Regulation Z strong deference."  Palmer v. Ameribanq Mortg. Grp., Civ. A. No. 05-2023, 2010 WL 3933273, at *5 (E.D. Pa. Oct. 6, 2010) (citation omitted).

argues that its rescission provision is instructive and urges us to adopt a similar requirement under UTCPCL. However, we will not import into the UTPCPL a requirement that is explicitly absent from its provisions.

We therefore conclude that Plaintiff has not, and cannot, state a UTPCPL rescission claim upon which relief may be granted, because he concedes that he is not a party to the mortgage that he seeks to rescind. We therefore grant Defendants' Motion to Dismiss Plaintiff's UTPCPL rescission claim.[6]

## IV. CONCLUSION

For the foregoing reasons, we deny Defendants' Motion insofar as it seeks dismissal of Count I, but grant it insofar as it seeks dismissal of Count II. Moreover, because RMS is only a Defendant to Count II of the Complaint, we dismiss RMS as a Defendant in this action. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.

---

[6] Defendants also argue that Plaintiff cannot proceed on his rescission claim because the Complaint does not allege that the mortgage transaction was not the result of a door to door sale that implicates the right to cancel. We need not reach this argument, as we dismiss Plaintiff's rescission claim because he is not a party to the mortgage contract.